IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JOHN FRANK MOORE, )
          )
   Plaintiff, )
          )
v. ) CASE NO.: 3:16-cv-408-GMB
          ) [WO]
NANCY A. BERRYHILL,[1] Acting )
Commissioner, Social Security )
Administration, )
          )
   Defendant. )

## MEMORANDUM OPINION AND ORDER

On July 9, 2012, Plaintiff John Frank Moore applied for disability insurance benefits under Titles II and XVI of the Social Security Act, alleging a disability onset date of June 30, 2006. Moore's applications were denied at the initial administrative level. Moore then requested a hearing before an Administrative Law Judge ("ALJ"). On December 18, 2013, the ALJ held a hearing, which was followed by a supplemental hearing on May 7, 2014. On July 6, 2015, the ALJ partially approved Moore's applications, finding that he was disabled as of May 10, 2013. Moore requested a review of the ALJ's decision concerning the disability onset date by the Appeals Council, which denied his request on April 27, 2016. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of April 27, 2016.

---

[1] Nancy A. Berryhill is the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this action. The Clerk of Court is DIRECTED to reflect this change on the docket.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of the undersigned United States Magistrate Judge. Based on a careful review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be REVERSED and this matter REMANDED to the Administrative Law Judge for further proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (citing *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Moore bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Is the claimant's impairment(s) severe?
(3) Does the claimant's impairment(s) satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Moore was 51 years old at the time of the ALJ's decision. R. 242. He is single with no children and lives with his brother in Alexander City, Alabama. R. 242–45. He completed high school in 1981 and attended special education classes. R. 70–71, 303 &

4

329. He suffers from intellectual difficulties, gastritis, and pulmonary ailments, including asthma and chronic obstructive pulmonary disease ("COPD"). R. 46. He also has severe anemia. R. 46. Additionally, Moore has a history of alcoholism and tobacco use. *E.g.*, R. 353–56. In the past, Moore worked as a steel pourer at Robinson Foundry ("Robinson") in Alexander City. R. 80–81 & 281–82. He last worked in June of 2006, when his employment terminated because the business closed. R. 70–71.

Following an administrative hearing, the ALJ found that Moore suffered from the following severe impairments under 20 C.F.R. § 404.1520(c): "substance addiction, to wit: alcohol; alcoholic gastritis; possible peptic ulcer disease; possible mild pancreatitis; severe anemia; asthma; and chronic obstructive pulmonary disorder ('COPD') with interstitial pulmonary fibrosis and chronic changes right lung with continued tobacco abuse." R. 46. Despite this finding, the ALJ concluded, at step three of the analysis, that none of Moore's impairments—nor a combination of his impairments—met or medically equaled the severity of one of those listed in the applicable regulations. *See* R. 46. The ALJ further found, at steps four and five, that Moore has the residual functional capacity ("RFC") to perform "medium work[2] . . . except the claimant does not possess the concentration, persistence or pace necessary to understand, remember or carry out even simple instructions nor does he possess the physical or mental capacity to perform sustained mental or physical work activity on a regular and continuous basis." R. 47. Ultimately, the

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

ALJ concluded that Moore has been disabled within the meaning of the Social Security Act from May 10, 2013, through the date of the ALJ's decision—but not since June 30, 2006, Moore's alleged disability onset date. *See* R. 51–58.

On November 20, 2013, Moore was examined by psychologist Donna Fleitas, Ph.D, generating the primary piece of medical evidence at issue in his appeal. Overall, Dr. Fleitas observed that Moore's "insight and judgment are poor," and his "intellect is impaired." R. 412. She noted that Moore appeared "disheveled" and "impaired," and that it was difficult to understand him because he "stuttered, especially when flustered." R. 412. While he appeared "in touch with reality," he has "grandiose ideas regarding his abilities." R. 412. Dr. Fleitas recorded Moore's IQ scores, which demonstrated that he is in the 1st percentile for verbal comprehension, 2nd percentile for working memory, and 3rd percentile for full-scale IQ. *See* R. 412. These scores reflected that his ability to process complex visual information is a strength, but that his "functioning and ability to care for [him]self are deficient," and he has substantially deficient comprehension and memory. R. 413.

Dr. Fleitas concluded that Moore's "deficits in adaptive functioning, abstract thinking and executive functioning are notable." R. 416. He not only "experiences significant difficulty in thought process and perception," but "does not recognize his own limitations although his deficits in concentration and ability to communicate make the deficits readily apparent to others." R. 416. He is "not capable of maintaining pace nor attention necessary to maintain employment," and is "not able to interact appropriately with peers, supervisors, or the public." R. 416. Moore is therefore "not capable of caring

6

for himself independently." R. 416. Based on the examination and the results of his testing, Dr. Fleitas diagnosed Moore with an unspecified neurocognitive disorder, a psychotic disorder with persistent hallucinations, and intellectual disability. *See* R. 415.

Despite his apparent limitations, Robinson employed Moore for 22 years. There, Moore poured and processed metal and cleaned equipment.[3] *See* R. 332, 335 & 411. His past shift supervisors, Sandy Meadows and Travis Sims, noted that the owners of the company "had sympathy" for Moore because of his punctuality and his difficulty in finding transportation to and from work. R. 333. He interacted with coworkers minimally during work and not at all outside of work. R. 333 & 336–37. He stayed employed because "he had been there for so long," despite the need to make "special accommodations for him." R. 336. Though Moore reported in his work history report that he supervised, hired, and fired other employees, *see* R. 281–82, his supervisors indicated that he did not have supervisory authority and instead reported coworkers' misdeeds to supervisors and acted as "more of a tattle tale." R. 333 & 336.

## IV. DISCUSSION

Moore presents three issues on appeal: (1) that the ALJ erred by failing to either complete a Psychiatric Review Technique Form ("PRTF") or incorporate its mode of analysis into his decision; (2) that the ALJ's decision contained multiple fatal inconsistencies and internal conflicts; and (3) that the ALJ erred by failing to evaluate whether Moore's intellectual disability met the requirements of Listing 12.05(C). The

---

[3] At the administrative hearing, a vocational expert classified Moore's past employment as a Steel Pourer Helper (skilled), Steel Pourer (skilled), and General Foundry Worker (unskilled). *See* R. 80–81.

court will address each argument in turn.

**A.      Psychiatric Review Technique**

Social Security Agency "regulations require the ALJ to use the 'special technique' dictated by the PRTF for evaluating mental impairments." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting 20 C.F.R. § 404.1520a(a)).  This technique necessitates examination of the claimant's functional limitations in his "activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation." *Id.* (quoting 20 C.F.R. § 404.1520a(c)(3–4)).  The first three factors are rated by employing a five-point scale ("None, mild, moderate, marked, and extreme") while the fourth factor is rated with a four-point scale ("None, one or two, three, four or more"). 20 C.F.R. § 404.1520a(c)(4).  "[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore*, 405 F.3d at 1214.  Importantly, the ALJ's failure to do so requires remand. *Id.*; *see also Driver v. Astrue*, 2009 WL 631221, at *25 (N.D. Ga. Mar. 9, 2009) ("The specific documentation requirements [of § 404.1520a] are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements.") (citation and internal quotation marks omitted).

Though the Eleventh Circuit has yet to define the contours of a "colorable claim of mental impairment," the court suggested in an unpublished decision that, where an ALJ analyzes a claimant's evidence of mental impairment, it can be inferred from that discussion that a claim "was at least colorable." *Mills v. Comm'r of Soc. Sec.*, 659 F. App'x

541, 542 (11th Cir. 2016). And courts often conclude that a claim of mental impairment is colorable where intellectual limitations have been implicitly incorporated into the ALJ's decision. *See, e.g.*, *Curry v. Astrue*, 2008 WL 161925, at *2 (S.D. Ala. Jan. 10, 2008) (finding that there was "no doubt that plaintiff has a colorable claim of a mental impairment" where the ALJ incorporated a claimant's cognitive limitations into the RFC assessment); *cf. Taylor v. Astrue*, 2011 WL 6093300, at *3 (S.D. Ala. Dec. 7, 2011) ("A colorable claim need not be meritorious. In general, a colorable claim is one which is not wholly unsubstantial and frivolous.") (citations and internal quotation marks omitted).

The Commissioner argues, in short, that Moore has not presented a colorable claim of mental impairment because he relies on an examination that took place in November of 2013, six months after his disability onset date as found by the ALJ. This argument is misguided. First, in the Eleventh Circuit, there is a presumption that an intellectual disability remains "constant throughout life." *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001). Thus, a post-decision assessment of a claimant's level of intellectual functioning relates back to the period of claimed disability. *See, e.g.*, *Black v. Astrue*, 678 F. Supp. 2d 1250, 1257 (N.D. Fla. 2010). Moreover, Moore presented a colorable claim of mental impairment because the ALJ repeatedly acknowledged Moore's significant cognitive limitations and the effect of those limitations on his overall level of functioning. *See, e.g.*, R. 43 ("In fact, the claimant's lack of understanding prompted the undersigned to allow the representative to procure a mental status evaluation as well as a second hearing."); R. 47 (finding that Moore cannot remember "even simple instructions" and does not possess the "physical or mental capacity to perform sustained mental or physical work

9

activity on a regular and continuous basis"); R. 50 ("This claimant is limited to simple, routine, and repetitive work activity that does not require his response to rapid and/or frequent multiple demands."). Accordingly, the court concludes that Moore presented a colorable claim of mental impairment.

Because the ALJ did not append a PRTF to the opinion, the law requires that he explicitly incorporate the form's analysis into his decision. Thus, he must have included "a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c)" of § 404.1520a. Here, while the ALJ incorporated part of the analysis, he did not conduct the analysis properly, nor in its entirety. For example, the ALJ discussed Moore's activities of daily living and his concentration, persistence, and pace. *See* R. 50–51. However, the ALJ did not analyze episodes of decompensation or devote any extended discussion to Moore's social functioning. Further, there is no indication that the ALJ has examined Moore's level of functioning on a five-point scale or made specific findings of the type required by the regulations. *See* 20 C.F.R. § 404.1520a(c); *Mills*, 659 F. App'x at 543–44 (concluding that the ALJ did not incorporate the PRTF's mode of analysis into the opinion where the ALJ failed to make a finding regarding the claimant's social functioning); *Moore*, 405 F.3d at 1213–14. Therefore, because the ALJ failed to attach a PRTF to his opinion or incorporate its mode of analysis, remand is required.

**B.     Inconsistencies**

Moore's second argument—that the ALJ's opinion contains several fatal inconsistencies—can be easily dispatched. Moore argues that the ALJ concluded in one portion of the opinion that Moore would be capable of performing medium work, but that

he concluded that Moore could perform only light work elsewhere. To the extent this discrepancy was erroneous, it was harmless and does not warrant consideration upon remand. *See, e.g.*, *Armstrong v. Colvin*, 2013 WL 1180305, at *3 (N.D. Ala. Mar. 18, 2013) ("A scrivener's error is harmless when the ALJ's decision would be the same despite the error.").

Moore also argued that the ALJ highlighted those portions of the record that made Moore "appear more capable than he is, while ignoring contrary evidence." Doc. 11 at 11. However, Moore's support for this proposition, which includes arguments regarding his high school education, employment history, and ability to work between the years of 2006 and 2013, constitutes nothing more than a frontal attack on the ALJ's factual findings. Of course, this ignores the fact that the court's role in this appeal is a "limited one," which includes a prohibition on reweighing the evidence or substituting its judgment for that of the ALJ. *See Bloodsworth*, 703 F.2d at 1239. Moore's arguments regarding the opinion of Dr. Fleitas and the ALJ's evaluation of Moore's intellectual disability will be addressed in Subsection C.

**C.     Listing 12.05**

At the third step, the ALJ concluded that if he stopped substance use, Moore "would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." R. 49. However, as Moore noted in his brief, the ALJ did not specifically address Listing 12.05, which encompasses intellectual disabilities. *See* R. 49–50.

In *Wilson v. Barnhart*, the Eleventh Circuit discussed the significance of the Social

Security regulations' listings:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.
>
> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *See id.*

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). "While Appendix 1 must be considered in making a disability determination, it is not required that the [ALJ] mechanically recite the evidence leading to her determination." *Hutchinson v. Brown*, 787 F.2d 1461, 1463 (11th Cir. 1986). Of course, it is the claimant's burden to demonstrate that one or more of his impairments meets or equals a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

To qualify under the listing Listing 12.05, Moore would have to first show that he has "(i) significantly subaverage general intellectual functioning (ii) with deficits in adaptive functioning (iii) that manifested before age twenty-two." *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773 (11th Cir. 2015) (citations omitted). "Adaptive functioning refers to a person's ability to perform activities of daily living." *Fischer v. Barnhart*, 129 F. App'x 297, 301 (7th Cir. 2005) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05(C)). "A valid IQ score of below 70 creates a rebuttable presumption that

12

a claimant manifested deficits in adaptive functioning before age twenty-two." *Id.* (citation omitted). Next, Moore would have to demonstrate that he meets the specific requirements of one of Listing 12.05's subparagraphs. *Id.*; 20 C.F.R. Pt. 404, Subpt. 1, App'x 1, § 12.05. Here, Moore claims to qualify for subparagraph (C), which requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. 1, App'x 1, § 12.05(C).

Moore argues that he met his burden to demonstrate that his condition meets or equals Listing 12.05(C), but that the ALJ did not properly analyze his condition in terms of Listing 12.05's requirements outside of "conclusory boilerplate language." Doc. 11 at 13–15. Moore is correct that, at least on its face, Dr. Fleitas' report exhibits the requirements of Listing 12.05(C), in that Dr. Fleitas reported a valid verbal IQ score of 63 and diagnosed Moore with neurocognitive and psychotic disorders in addition to an intellectual disability. *See* R. 412–15. The Commissioner counters, however, that Moore failed to meet his burden because his activities reflect a high level of adaptive functioning. Doc. 12 at 8–11; *see also Hodges*, 276 F.3d at 1269 ("[T]he Commissioner may present evidence of [the claimant's] daily life to rebut [the] presumption of mental impairment.").

An ALJ's finding that a claimant's impairments do not meet or equal a listing need not necessarily be stated explicitly, and instead "may be implied from the ALJ's decision." *James v. Comm'r, Soc. Sec. Admin.*, 657 F. App'x 835, 838 (11th Cir. 2016); *see also Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). For example, the ALJ's conclusion that a claimant's prior work experience and advanced activities of daily living

13

indicate that he does not have an intellectual disability may be a sufficient basis for the ALJ's finding. *James*, 657 F. App'x at 838; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("[A] valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."). In the Eleventh Circuit's unpublished decision in *James*, the court concluded that the Commissioner successfully rebutted the presumption that the claimant had the requisite deficits in adaptive functioning by pointing to the claimant's work history and daily activities. *See id.* Specifically, the claimant carried semi-skilled employment and served as a shift supervisor at a Pizza Hut restaurant. *Id.* The claimant also cared for herself adequately, socialized, and attended church services weekly. *Id.* Therefore, substantial evidence supported the conclusion that she failed to meet Listing 12.05(C), even though this conclusion was not explicitly stated in the ALJ's decision.

Other courts have similarly held that substantial evidence supported an implicit finding that the claimant failed to meet the requirements of Listing 12.05 where the record demonstrated an extensive employment history and advanced daily activities. *See, e.g.*, *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 774 (11th Cir. 2015) (finding substantial evidence supported an implicit Listing 12.05 conclusion where the claimant attended high school without any special educational assistance, performed household chores, attended church twice per week, had a driver's license, and previously worked for years at multiple different skilled and semi-skilled jobs); *Mazer v. Comm'r of Soc. Sec.*, 2016 WL 4409341, at *4 (M.D. Fla. Aug. 19, 2016) (finding the same where the claimant had a driver's license, could manage his own finances, and worked at a number of jobs

during his alleged period of disability and also prior to the disability period as a manager with supervisory authority); *Welch v. Soc. Sec. Admin., Comm'r*, 2016 WL 1270619, at *4 (N.D. Ala. Mar. 31, 2016) (affirming where the claimant took care of family members, performed household chores, drove, socialized with others, managed her finances, and regularly attended activities outside of the home).

On the other hand, where the record is devoid of evidence of an advanced work history and sophisticated activities or daily living such that a reviewing court cannot "easily discern the ALJ's path or reasoning," *Tubbs v. Berryhill*, 2017 WL 1135234, at *6 (N.D. Ala. Mar. 27, 2017), courts remand with instructions for the ALJ to consider explicitly whether the claimant meets or equals the requirements of Listing 12.05. For example, in *Hartman v. Colvin*, a court in the Southern District of Alabama concluded that remand was appropriate where, despite the claimant's 3.18 high school GPA and ability to cook, clean, manage her own finances, and drive, she was in special education classes, received a certificate of attendance and not a high school diploma, lived with her mother, and did not have a skilled or semi-skilled employment history. *See Hartman v. Colvin*, 2014 WL 3058550, at *6–8 (S.D. Ala. July 7, 2014) ("[T]he record is certainly not clear that the presumption of deficits in adaptive functioning, to which the Plaintiff is entitled, is rebutted by the evidence of record . . . ."). Faced with comparable facts, other district courts in the Eleventh Circuit routinely remand to the ALJ to analyze whether the claimant meets or medically equals Listing 12.05. *See, e.g., Hogue v. Colvin*, 2014 WL 1744759, at *5–6 (S.D. Ala. Apr. 30, 2014) (concluding that the claimant's daily activities referenced by the ALJ—including the fact that he had friends and a girlfriend, handled his own finances,

performed household chores, and cared for his son—"are not necessarily inconsistent" with the claimant's low IQ scores); *Frank v. Astrue*, 2011 WL 6111692, at *14–15 (S.D. Ala. Dec. 8, 2011) (finding the same where the claimant raised children and held steady employment in the past, but failed to complete high school and took special education classes).

The facts of Moore's case are far more analogous to the latter class of cases than to the former. In fact, to the extent there are discrepancies between Moore's level of adaptive functioning and the claimants in *Tubbs*, *Hartman*, *Hogue,* and *Frank*, the claimants in those cases arguably demonstrated a higher level of functioning than Moore. It is undisputed that Moore was enrolled in special education classes. *See* R. 329. Moreover, Moore has never held a driver's license, does not care for relatives, has lived his entire life with his mother and now his brother, and worked at only one place of employment. And multiple former supervisors stated that, despite claims to the contrary on his disability report form, Moore did not have supervisory authority over other employees or the ability to hire and fire. While Moore is apparently able to cook and perform other limited household chores, "everyday activities of short duration" are not disqualifying. *Lewis*, 125 F.3d at 1441. Indeed, the court cannot conclude that Moore's modest daily activities—which include watching television, playing cards, preparing meals, and attending church once a week—are so advanced as to contradict the reported IQ scores and rebut the presumptive deficits in his adaptive functioning. The record also does not reveal substantial evidence of high social functioning. To the contrary, Moore is single and does not report any social activities beyond church attendance. *E.g.*, R. 294. His former supervisors confirmed that he did not

interact with coworkers or socialize after work. R. 333 & 336.

Moreover, the ALJ mischaracterized the former supervisors' affidavits, concluding that they demonstrated that Robinson employed him not "out of benevolence but because he was an exemplary employee," and that Moore had seniority and supervisory authority. R. 52. In reality, as discussed, Meadows and Sims indicated that the only source of Moore's "seniority" was the length of time he had served, but that he never supervised other employees, did not have the authority to hire or fire, and that Robinson made "special accommodations" for Moore and only continued to employ him "because he had been there for so long." R. 332–36. The ALJ also relied on the fact that Moore finished 156 out of 206 graduates in his high school class. R. 52–53. But while the ALJ concluded that Moore's "significant work history" and daily activities rebut the presumption of intellectual disability, Moore's work history, educational attainment, and activities of daily living—individually and collectively—are not advanced enough to rebut the presumption of deficient adaptive functioning. Further, to the extent Moore's self-reported activities contradict others' observations of him, Dr. Fleitas explicitly stated that Moore does not recognize his own limitations and that his ideas regarding his abilities were "grandiose." R. 412. Thus, there is not substantial evidence in the record to support the ALJ's implicit finding that Moore's impairments do not meet or medically equal the requirements of Listing 12.05(C).

## V. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence and based upon the proper legal

standards. It is therefore ORDERED that the decision of the Commissioner denying benefits is REVERSED and this matter REMANDED to the Administrative Law Judge for further proceedings.

Specifically, on remand, the ALJ is instructed to:

(1) attach a Psychiatric Review Technique Form or apply its form of analysis; and

(2) determine whether Moore's condition meets or equals Listing 12.05(C).

A final judgment consistent with this opinion will be entered separately.

DONE this 12th day of September, 2017.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE